NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| BABIKER I.,<br><br>                  Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br><br>                  Defendant. | Civil Action No. 25-2791 (SDW)<br><br>**OPINION**<br><br>April 27, 2026 |

**WIGENTON**, District Judge.

Before this Court is Plaintiff Babiker I.'s ("Plaintiff")[1] appeal of the final administrative decision of the Commissioner of Social Security ("Commissioner") with respect to Administrative Law Judge Trina Moore's ("ALJ Moore") denial of Plaintiff's claims for supplemental security income ("SSI") and a period of disability and disability insurance benefits ("DIB") under the Social Security Act (the "Act").  (D.E. 1.)  This Court has subject matter jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).  Venue is proper under 42 U.S.C. § 405(g).  This appeal is decided without oral argument pursuant to Federal Rule of Civil Procedure 78.  For the reasons set forth below, the Commissioner's decision is **AFFIRMED**.

I.       FACTUAL BACKGROUND

---

[1] Plaintiff is identified only by his first name and last initial in this opinion, pursuant to Standing Order 2021-10, issued on October 1, 2021, available at https://www.njd.uscourts.gov/sites/njd/ files/SO21-10.pdf.

1

Plaintiff is 53 years old and alleges that he became disabled on July 1, 2022 (the "alleged onset date").  (Administrative Record ("R.") 14.)

Plaintiff's disability claim is rooted in his ongoing issues with his right shoulder and neck, which the record appears to demonstrate first became an issue in 2021.[2]  (R. 832–33.)  The administrative record demonstrates multiple visits to an orthopedic doctor as well as physical therapy and the administration of x-rays, magnetic resonance imaging ("MRIs"), and injections during 2021 through 2022.  (*See, e.g.*, R. 694, 810, 888, 891 (MRIs); 694, 893, 897 (x-rays); 744, 812, 818 (orthopedic office visits); 680, 682, 684, 686, 688 (physical therapy).)  On October 18, 2022, Plaintiff had a right shoulder arthroscopy in which the surgeon identified "significant fraying and detachment of the biceps anchor" and elected to perform a biceps tenodesis.[3]  (R. 749–50.)  After his surgery, Plaintiff attended physical therapy for several months.  (*See, e.g.*, R. 653, 661,

---

[2] The record references concussions following involvement in two separate motor vehicle accidents—one in 2017 and another in 2019. (R. 603.)    Following the 2017 accident, Plaintiff was diagnosed with "closed head trauma, postconcussion syndrome, and mild traumatic brain injury." (*Id.*)  However, the record is devoid of any documentation of the 2017 accident and subsequent diagnoses and treatment, save a 2023 report providing Plaintiff's background. (*Id.*)  According to this report, the 2017 concussion "resulted in ongoing headaches, anxiety, depressed mood, and memory problems." (*Id.*)  Following the 2019 accident, Plaintiff also reported experiencing headaches accompanied by "nausea, vomiting, sensitivity to light (photophobia), sensitivity to sound (phonophobia), and dizziness." (*Id.*)  The record reflects Plaintiff was prescribed Fioricet for the tension headaches beginning December 25, 2019 and ending December 24, 2021 for "noncompliance."  (R. 402, 590, 850.)    There is nothing in the record demonstrating Plaintiff complaining of headaches from thereafter until about May 2023; in fact, Plaintiff affirmatively denied having headaches throughout 2021 and 2022. (R. 778, 788–89, 798–99, 818–19.)  The bulk of the medical records from 2021 through 2022 indicate Plaintiff experienced headaches in his medical history.  (*See, e.g.*, 649, 657, 659, 661, 663, 665, 667, 669, 680, 682, 684, 686, 692, 694.)

[3] An arthroscopy is "a surgical procedure to diagnose and treat structural problems" in joints, which surgeons perform by using an arthroscope—a long, thin tube that transmits light and video—to look inside a person's joint.  Cleveland Clinic, *Arthroscopy*, https://my.clevelandclinic.org/health/treatments/21801-arthroscopy (last visited April 21, 2026).

A bicep tenodesis surgery is used to treat injuries that occur when a person tears or damages the tendon connecting the bicep muscle to the shoulder.    Cleveland Clinic, *Biceps Tenodesis*, https://my.clevelandclinic.org/health/treatments/21926-biceps-tenodesis (last visited April 21, 2026).

2

665, 667.)  On July 1, 2023, Plaintiff was administratively discharged from active patient status due to inactivity of therapy services.  (R. 638.)

As of May 30, 2023, Plaintiff also reported having neck pain and was diagnosed as having disc herniations at C3-4 and C4-5, for which an anterior cervical discectomy and fusion were recommended.[4]  (R. 704–05.)  Plaintiff underwent this surgery on June 19, 2023.  (R. 715–16.) Following the surgery Plaintiff had physical therapy from August 2023 through September 2023 and was administratively discharged from active patient status due to inactivity on November 6, 2023.  (R. 615, 616, 618, 620, 622, 624, 626, 628.)

In May 2023, Plaintiff also visited Mehrdad Golzad, MD, for a brain injury evaluation.  (R. 603.)  Plaintiff reported severe headaches and photophobia.  (R. 605.)  Dr. Golzad's impression was: "[c]oncussion without loss of consciousness, resulting in an exacerbation of [Plaintiff's] pre-existing headaches[,] dizziness, blurred vision, anxiety, depression, and memory loss." (*Id.*)  Dr. Golzad prescribed Gabapentin for headache prevention and insomnia and Fioricet for acute headaches. (*Id.*)

Following his visit with Dr. Golzad, Plaintiff visited the Palisades Medical Center Emergency Department ("PMCED") on May 15, 2023, reporting he had a headache, right arm swelling and "bilateral foot swelling" for about four days.  (R. 400.)  The treating physician diagnosed Plaintiff as having septic arthritis.  (R. 408.)  Plaintiff refused treatment, against medical advice, and was discharged.  (R. 408.)  After the May 15, 2023 visit to PMCED, the record demonstrates Plaintiff either denied having headaches, (R. 770), or stated that they had improved,

---

[4] An anterior cervical discectomy and fusion surgery is a procedure in which a surgeon removes the disk between the affected bones and welds them together to relieve pain caused by pinched nerves in a person's neck.    Cleveland Clinic, *ACDF (Anterior Cervical Discectomy & Fusion) Surgery*, https://my.clevelandclinic.org/health/procedures/acdf-surgery (last visited April 21, 2026).

(R. 706, 608).[5]  However, records from visits with Dr. Golzad on October 30, 2023 and December 27, 2023, indicate Plaintiff reported "persistent headaches, dizziness, mood changes, memory, and cognitive difficulties," for which Plaintiff was prescribed medication.  (R. 609, 611.)

## II.    PROCEDURAL HISTORY

### A.  Initial Application and Administrative Hearing

On November 2, 2022, Plaintiff applied for SSI, a period of disability, and DIB with an alleged onset date of July 1, 2022.  (R. 14, 189–97.)  The claim was initially denied on July 6, 2023, and upon reconsideration on August 23, 2023.  (R. 103, 111, 115.)  Pursuant to Plaintiff's request for a hearing, ALJ Moore held an online video hearing on March 25, 2024.[6]  Plaintiff was represented by counsel at the hearing.[7]  (R. 33.)  ALJ Moore also heard testimony from impartial vocational expert James Soldner ("VE Soldner").  (R. 35, 47–59.)

Judge Moore began the hearing by questioning Plaintiff about his work history.  Plaintiff testified as to his then-current employment "driving for a physical therapy place" for approximately 30 to 32 hours per week.  (R. 36–37.)  Plaintiff described the job as one in which he was predominantly sitting, but would occasionally lift items, such as walkers, weighing about 10 pounds.  (R. 36–37.)  Plaintiff testified that prior to that job, he delivered packages from November 2023 to December 2023.  (R. 37–38.)  Plaintiff also testified about working as a Lyft

---

[5] The remaining documents in the record for the period between May 2023 and September2023 solely list headaches as part of Plaintiff's medical history.  (*See, e.g.*, R. 632 (August 2, 2023), 628 (August 10, 2023), 618 (September 1, 2023).)

[6] Notwithstanding Plaintiff's late submission of written evidence, ALJ Moore found that the requirements of 20 C.F.R. 404.935(b) and 416.1435(b) were satisfied and admitted said evidence into the record.  (R. 14, 35.)

[7] The ALJ's written decision reflects that William John Wright, a non-attorney representative, represented Plaintiff.  (R. 14.)  However, the March 25, 2024 hearing transcript indicates Plaintiff's attorney, Adam Casner, represented Plaintiff at the hearing.  (R. 33.)

driver from approximately 2017 to 2019 and how when he picked up clients from the airport, he would not assist them with their bags due to their weight.  (R. 38.)  Lastly, Plaintiff discussed working as an armored car driver for GARDA from 2000 to about 2008.  (R. 38–39.)

Next, Plaintiff's attorney questioned Plaintiff as to the physical or mental impairments comprising his claim.  (R. 39–47.)  Plaintiff characterized getting surgery on his right shoulder as making things better "to some extent," but described his ongoing issues post-surgery.  (R. 40.)  He explained he gets shooting nerve pain approximately four times per week and swelling in his right hand for two to three days at a time.  (R. 40–41.)  As to his neck, Plaintiff explained that notwithstanding undergoing neck surgery in June 2023, he still experienced frequent headaches— sometimes up to five days per week—when attempting to sleep.  (R. 43–45.)  Lastly, Plaintiff recounted how most recently, as of late 2023, he had been diagnosed with a herniated disc.  After declining an epidural as a means of treatment for the herniated disc, Plaintiff's doctor suggested surgery, which Plaintiff explained he cannot have because his insurance would not cover it.  (R. 42–43.)  When asked whether he had to "miss any work as a result of any of [his] conditions or symptoms?" Plaintiff answered in the negative and indicated that even if painful, he must work to support himself.  (R. 46.)

After hearing from Plaintiff, Judge Moore questioned and heard testimony on job classification and availability from VE Soldner.  VE Soldner classified Plaintiff's past relevant work consistent with the classifications in the Dictionary of Occupational Titles ("DOT") and assigned each a Specific Vocational preparation ("SVP") level.[8]  (R. 47–51.)  Then, Judge Moore

---

[8] "The DOT is a vocational dictionary that lists and defines all jobs available in the national economy and specifies what qualifications are needed to perform each job."  *Zirnsak v. Colvin*, 777 F.3d 607, 616 (3d Cir. 2014) (quoting *McHerrin v. Astrue*, No. 09-2035, 2010 WL 3516433, at *3 (E.D. Pa. Aug. 31, 2010)). SVP levels "measure the skill level necessary to perform a particular job," ranging from level 1 to level 9. *Id.*

presented VE Soldner with three hypotheticals exhibiting different limitations and asked him to determine whether an individual with Plaintiff's age, education, and work experience could perform Plaintiff's past work notwithstanding said limitations. (R. 51–57.) Additionally, the ALJ asked VE Soldner to identify jobs in the national economy that Plaintiff could perform with each hypothetical. (R. 51–57.)

For the first hypothetical, VE Soldner opined that an individual like Plaintiff with a medium work residual function capacity ("RFC") "frequently reaching in all directions with the right upper extremity" and occasionally reaching overhead bilaterally could perform Plaintiff's past work. (R. 51–52.) With the transferable skills from Plaintiff's past work, such an individual could perform the job of a sales route driver, of which there are 284,000 full-time jobs in the national economy. (R. 53.) Second, VE Soldner concluded an individual like Plaintiff with a light RFC "frequently reaching in all directions" with the right upper extremity, but never reaching overhead bilaterally, would be able to perform Plaintiff's past work as an armored car driver—but only as performed and not as described by the DOT. (R. 54–55.) Similarly, VE Soldner concluded such an individual would not be capable of performing the jobs of as a rideshare driver and taxi driver, both as described in the DOT and as performed. (R. 54–55.) At a light FRC, VE Soldner identified office helper, mail clerk, cafeteria attendant, coach driver, and merchant patroller as jobs available in the national economy. (R. 55–56.) Lastly, VE Soldner considered ALJ Moore's third hypothetical and determined that for an individual like Plaintiff with a sedentary RFC, all past relevant work would be precluded since there are no transferable skills from Plaintiff's past work to such occupations. (R. 56, 59.)

**B. ALJ Moore's Decision**

On May 23, 2024, ALJ Moore issued a written opinion concluding Plaintiff was not

disabled under Sections 216(i), 223(d), and 1614(a)(3)(A) of the Act and denying his request for SSI, a period of disability, and DIB.  (R. 15, 25.)  To determine whether Plaintiff was disabled, ALJ Moore considered the five-step sequential evaluation process.  At step one, ALJ Moore concluded that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of July 1, 2022.  (R. 17.)

At step two, ALJ Moore found that Plaintiff's degenerative joint disease in the right shoulder with surgical intervention, degenerative disc disease in the cervical spine status post cervical fusion, gout, and migraines were severe.  (R. 17.)  However, Plaintiff's mental impairments of insomnia, depression, and anxiety were found to be non-severe.  (R. 17–18.)  ALJ Moore came to this conclusion after examining each of the four broad functional areas of mental functioning set out in the Listing of Impairments and determining Plaintiff had mild limitations in the areas of understanding, remembering, or applying information (functional area one); concentrating, persisting, or maintaining pace (functional area three); and adapting or managing oneself (functional area four), and no limitation in interacting with others (functional area two).  (R. 17–18.)

At step three, ALJ Moore concluded Plaintiff's impairments, individually or in combination, did not meet or medically equal the severity of those listed in Listing of Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Appendix").  (R. 19.)  ALJ Moore considered Listings 1.15 and 1.18 but found that Plaintiff's treatment records did not establish that he "has a documented need for an ambulatory device, an inability to use one upper extremity . . . to independently initiate, sustain, and complete work related activities involving fine and gross movements."  (*Id.*)  Despite there not being specific medical listings for gout or migraines, ALJ

Moore evaluated these impairments and found that the functional effects of these impairments did not equal any medical listing.  (*Id.*)

As to Plaintiff's RFC, ALJ Moore determined Plaintiff can perform light work with some limitations, such as being limited to "frequent reaching in all directions with the right upper extremity" and never performing overhead reaching bilaterally.  (R. 19.)  ALJ Moore found Plaintiff's medically determinable impairments could reasonably be expected to cause his alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were not consistent with both the medical and other evidence in the record.  (R. 20.)  ALJ Moore's decision discussed Plaintiff's medical records, explaining which medical opinions he found persuasive or non-persuasive and why.  (R. 20–23.)

At step four, ALJ Moore concluded Plaintiff can perform his past relevant work of an armed car guard/driver as actually performed.  (R. 23.)  Considering Plaintiff's age, education, work experience, and RFC, ALJ Moore also concluded that Plaintiff could perform jobs existing in significant numbers in the national economy at step five.  (*Id.*)  More specifically, she found that Plaintiff could work as a coach driver, merchant patrol, mail clerk, cafeteria worker, or an office helper.  (R. 24.)  Thus, the ALJ concluded Plaintiff was not disabled under the Act during the relevant period.  (R. 25.)

### III.    LEGAL STANDARD

#### A.  Standard of Review

When reviewing applications for Social Security disability benefits, this Court exercises plenary review of legal issues decided by the ALJ and upholds factual findings if supported by substantial evidence.  *Zaborowski v. Comm'r of Soc. Sec.*, 115 F.4th 637, 639 (3d Cir. 2024); 42 U.S.C. § 1383(c)(3); 42 U.S.C. § 405 (g) ("The findings of the Commissioner . . . as to any fact, if

supported by substantial evidence, shall be conclusive.").  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quoting *Consolidated Edison Co. of N.Y. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).  Under the substantial evidence standard, the threshold for evidentiary sufficiency is not high.  *Id.*  An ALJ's decision cannot be set aside merely because this Court "acting *de novo* might have reached a different conclusion."  *Hunter Douglas, Inc. v. N.L.R.B.*, 804 F.2d 808, 812 (3d Cir. 1986).  So long as the ALJ's decision sufficiently develops the record and explains its findings to permit meaningful review, the ALJ need not "use particular language or adhere to a particular format" when conducting the analysis.  *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004).

### B.  The Five-Step Disability Test

Under the Act, the Social Security Administration is authorized to pay SSI and DIB to "disabled" persons.  42 U.S.C. § 1382(a).  A person is "disabled" if "he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).  A person is unable to engage in substantial gainful activity

> only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

Regulations promulgated under the Act establish a five-step process ALJs must use to determine whether a claimant is disabled for purposes of SSI and DIB.  20 C.F.R. § 404.1520(a);

9

*Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 201–03 (3d Cir. 2019).  The ALJ determines whether the claimant:  first, is currently engaged in substantial gainful activity; second, has a "severe" and "medically determinable" impairment; and third, has an impairment, or combination thereof, that is equal to or exceeds one of those included in the Listing of Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, 20 C.F.R. §§ 404.1520(a)(4)(i)–(iii).  Prior to reaching the fourth step, the ALJ considers the claimant's residual functional capacity ("RFC"), which is "the most [the claimant] can still do despite [his or her] limitations," as it relates to meeting "the physical, mental, sensory, and other requirements of work.  *Id.* §§ (a)(4)(iv), 404.1545(a)(4).  Then, at step four, the ALJ determines whether the claimant can still do his or her past relevant work[9] by comparing his or her RFC to the "physical and mental demands" of that work.  *Id.* §§ (a)(4)(iv), (f).  Lastly, at step five the ALJ decides whether the claimant "can make an adjustment to other work" considering his or her RFC, age, education, and work experience.  *Id.* § (a)(4)(v).  The claimant bears the burden of proof at all steps except step five, where the burden is on the Commissioner.  *Hess*, 931 F.3d at 201.

## IV.    DISCUSSION

Plaintiff's appeal is focused on the ALJ's treatment of his migraines.  Plaintiff submits that at both step three and the RFC determination, the ALJ erred by failing to consider the total limiting effects of his migraines, as exhibited by the ALJ's lack of discussion of Social Security Ruling ("SSR") 19-4p.  (D.E. 9 at 14–18.)  Plaintiff also notes ALJ Moore did not discuss how Plaintiff's credibility was lacking.  (*Id.* at 18–19.)  Thus, Plaintiff asks that this Court remand the matter for a rehearing.  (*Id.* at 20.)

Upon review, ALJ Moore's decision is supported by substantial evidence, sufficiently

---

[9] Past relevant work is work performed by the claimant "within the past five years that was substantial gainful activity and that lasted long enough" for the claimant to learn to do it.  20 C.F.R. § 404.1560(b)(1)(i).

developed the record, and explained its findings to permit meaningful review, such that remand is inappropriate. *See Zaborowski*, 115 F.4th at 639; *Jones*, 364 F.3d at 505. Regarding Plaintiff's migraines, ALJ Moore noted in her decision that although there was "no specific medical listing" for migraines, the migraines could "complicate and aggravate existing physical and mental impairments" and could "alone or in combination with other impairments medically equal a listing." (R. 19.) However, after evaluating Plaintiff's migraines, the ALJ found that the migraines' functional effects did not equal any medical listing. (*Id.*) ALJ Moore's decision also included a summary of the evidence pertaining to Plaintiff's headaches. (R. 22.) ALJ Moore was not required to conduct a more detailed analysis, nor was she required to cite SSR 19-4p, when it is clear she considered Plaintiff's complaints, and the relevant record evidence, related to migraines. *See Holiday v. Barnhart*, 76 F. App'x 479, 482 (3d Cir. 2003) (rejecting the plaintiff's argument that an ALJ erred because the ALJ failed to mention SSR 99-2p and reasoning there is no "duty which requires ALJs to specifically mention relevant Social Security Rulings when rendering a decision on an individual's claim for Social Security benefits").

Further, Plaintiff solely points to the ALJ's alleged error but does not set out—pointing to specific medical evidence in the record—how that error was harmful, which is detrimental to his appeal. Plaintiff maintains his testimony was sufficient and credible, yet ALJ Moore concluded that Plaintiff's statements "about the intensity, persistence, and limiting effects of his symptoms" were "inconsistent because the record [did] not generally support" Plaintiff's alleged loss of functioning. (R. 20.) Thus, while it is possible for testimony concerning physical pain alone to support a claim for disability benefits, the claimant must still satisfy the requisite burden of proof. *Bittel v. Richardson*, 441 F.2d 1193, 1195 (3d Cir. 1971); *see also* 20 C.F.R. § 404.1529(c)(4) (stating that when considering whether someone is disabled, the claimant's

11

statements "about the intensity, persistence, and limiting effects" of their symptoms will be "evaluate[d] . . . in relation to the objective medical evidence and other evidence"). Here, the record—which spans from about late 2019 through 2023—contains very little substantiating the migraines; at most, there is record of persistent headaches from May 2023 through December 2023. Plaintiff's failure to point to other evidence in the record to support his claim is detrimental to his appeal. *See Stacey C. v. Comm'r of Social Sec.*, No. 24-8187, 2025 WL 2171055, at \*12 (D.N.J. July 31, 2025) (rejecting the plaintiff's argument that the ALJ erred, even assuming the plaintiff's uncorroborated testimony were credited, where the plaintiff failed to cite to record evidence demonstrating she could meet the requirements of Listing 11.02).

## V.    CONCLUSION

For the reasons set forth above, the Commissioner's decision is **AFFIRMED**. An appropriate order follows.

           /s/ Susan D. Wigenton
        **SUSAN D. WIGENTON, U.S.D.J.**

Orig:  Clerk
cc:    Parties

12